May it please the Court. My name is Brittany Lacayo and I represent the appellant in this case, Richard Wayne Barton. With this Court's permission, I would like to reserve five minutes for my rebuttal. There are five issues pending in this appeal. First, there was no evidence presented by the government at the plea hearing or in the record that another person actually downloaded the material that appellant uploaded to the website. Therefore, the District Court plainly erred by accepting his plea for distribution of child pornography without a sufficient factual basis. Second, appellant's convictions and separate sentences for the receipt and possession counts violate the Fifth Amendment's Double Jeopardy Clause. Barton could not receive child pornography without also possessing the child pornography. Therefore, he was subjected to double jeopardy for being punished for receipt and possession of the same child pornography since possession is a lesser included offense of receipt. Third, the government did not meet its burden of proving 2G2.2B3B's applicability by a preponderance of the evidence when it failed to prove an intentional exchange with a specific person. As a result, the trial court erred in denying appellant's objection to the five-level enhancement for distribution for the receipt or expectation of receipt of a thing of value, but not for pecuniary gain. Fourth, this case should be remanded so that appellant can be resentenced in light of the amendment to the sentencing guidelines regarding 2G2.2B3B. And lastly, the trial counsel provided ineffective assistance of counsel for failing to argue for a further variance based on the pending amendment clarifying the applicability of the enhancement. Based on the time restraints in hearing the case of 2G2.2B3B. Robertson, I doubt that you're going to have time to cover all of those issues, so you can certainly rely on your brief as to the ones that you don't think are as significant. Yes, Your Honor. And based on the time restraints, I would like to focus my argument on the first two issues unless this Court has any questions on the remaining issues. Now, the guideline issue was not preserved. Is that right? Excuse me. Excuse me. The distribution issue was not preserved. That's correct, Your Honor. It's going to be analyzed in a plain-error review. Is that really? Is it even open to plain-error review? In other words, I thought if you plead guilty, then the double jeopardy argument would have to be plain on the face of the indictment. Is that a fair statement of the law? Regarding the double jeopardy enhancement, our argument is that that would be subject to plain-error review. I know that the one thing I did these two offenses, and the indictment doesn't say same day, same images, do you still have an ability to argue that there's going to be multiplicitous punishment? Yes, Your Honor. And this is addressed in United States v. Gross. The guilty — Okay. Gross talks about what is distribution, but I'm saying do you have a Fifth Amendment ability to argue against the special assessments that were applied on these two counts? Yes, Your Honor. It's stated in that case that a guilty plea does not waive a double jeopardy challenge to a charge where a judge from the face of the indictment — On the face of the indictment. But this indictment didn't say same images, same day. Yes, Your Honor. And that's why we're alleging that there is not a sufficient factual basis. And we believe it's the government's burden to prove as far as the double jeopardy issue that there is not a double jeopardy problem. I'm having difficulty with that. If you don't ask for a bill of particulars at the beginning, and then you don't ask them to elect punishment at sentencing, you wait until appeal, and you say what I pled guilty to, in fact, is the same crime, it would seem you could only argue that if the face of the indictment proves it's the same. And where on the face of this indictment do we know it was the same images, receipt, and possession? Well, Your Honor, I think this also goes to the opinion that you wrote in Warner, where the defendant had challenged both his indictment and his sentences as being multiplicitous, and the Court addressed the counts that were raised by a motion to dismiss at the end of the government's case with a de novo review. However, as far as the arguments for multiplicity that were not raised in the motion to dismiss, at the end of the government's case, you addressed this with a plain-error standard of review, and that was in the Warner case, raising multiplicity. Yes, but, okay. I think we're saying the same thing. We'd have to, in this case, resolve it by looking at the face of the indictment. That would have to prove that it was multiplicitous, just the indictment. It's not some government burden to unprove something. I believe that, in this case, we have to look at the evidence and whether or not the evidence would stand for both a receipt and a possession count being different evidence, which we do not have in this case. Okay. That's fine. Go ahead with your argument. To complicate it a little bit more or confuse it a little bit more, no Rule 12 motion was filed challenging the indictment, was it? That is correct. Now, the statute regarding Rule 12 simply ---- That was my question, that no Rule 12 motion was filed, and therefore, you can't even have plain-error review, can you? Well, Your Honor, that's what I would like to address. Rule 12 just regards that if you do not file the motion, that it's then untimely. However, under Federal Law Criminal Procedure 52B, plain-error affects substantial rights that may be considered. Well, I'm sure we'll explore this, but it's my understanding that the failure to file a Rule 12 motion is akin to waiver of that point. But we'll hash that out a while. And, Your Honor, just to further address that issue ---- You don't need to, unless you want to. I would like to address it just by referencing a few cases. Several circuits have distinguished between multiplicitous indictments, which is actually referenced in Rule 12, versus multiplicitous convictions and sentences. And that's referenced in United States v. Zappala, which is a Ninth Circuit case, 509 Federal Quarter Third Series 1060. Additionally, United States v. Maxwell, the Sixth Circuit in 2015, additionally addressed a multiplicitous conviction ---- multiplicitous indictment. And in Zappala, they had said that the Court distinguished between multiplicity in the indictment, which can be waived, and objections to multiplicitous sentences and convictions, which cannot be waived. Additionally, in United States ---- Sotomayor, a bare-bones indictment might not tell you, but then you get a trial and the evidence comes in, and all of a sudden it's vastly apparent. You still then should move to elect, so you don't get the special assessment. Well, the way the rules read is that the point where you ---- the double jeopardy would come into place is once the convictions are entered, the Court is supposed to vacate the conviction ---- vacate one of the convictions if two of them would violate double jeopardy. So requiring an appellant to raise pretrial a multiplicitous indictment, you can't do that until the convictions are entered. It's at that point that they say that one of the convictions should be vacated. Additionally, multiple cases have addressed this on appeal, raising or using the plain-error standard of review, and it was just raised for the first time on appeal. This includes the Eighth Circuit in Mullenbrook, the Third Circuit in Miller. This is unrebutted narrative to the probation officer, is that there were thousands of images involved, correct? Yes. There were thousands of images involved. And the indictment says different-day receipt, different-day possession found? The issue in this case is that the ---- yes. Yes, Your Honor, that is true. The issue in this case is that the images that he was in possession of are the same images that he received. What he did was he had a website, and when he would be administering the website, he would download all of the images onto his external hard drive. But the receivings occurred at all different times. There is no evidence of that, Your Honor. The only evidence that ---- How do you show a miscarriage of justice even if we accept plain-error review? Because the images that we have, based on the information that is formed in this case, is that what he received on his external hard drive was the information ---- the same information that he received in the receipt count from the website. So those are the same images. And additionally ---- One second, Your Honor. I know your time is ticking, and the sentencing issue is a confusing one for me. The district court said he was going to try to use the amended version? That's right. Correct? But the reality is he wouldn't have to use that book. He would be using the book and the enhancement that would be governed by our gross opinion, correct? Well, I think that that part is a little bit confusing when you read both of the briefs, because he did file a pretrial motion, the appellant, raising the objection to the enhancement that we're raising in this brief. But he also raised an objection to the state of masochism and the vulnerable victim enhancement that was pending the amendment as well. That is the issue that was addressed by the district court in sentencing. The court addressed that issue. The court also addressed the issue that we raised in this brief. However, the court did not, it appears from the brief, that he was not aware of the pending amendments in the guidelines. So then why didn't he get it exactly right? He applied the guideline book that applied at the time. Because the pending amendment is a clarifying one. It specifically states in the supplement to Appendix C that this was to clarify. So he was the chief of the court. Okay. But once you go down that route, can you — I may be wrong, but where in your brief did you argue that this amendment is retroactive because it's clarifying? I argued in my brief that it was a clarifying amendment, and that's why the court — Where did you say, therefore, it's retroactive? I don't think I specifically stated that, but the court's — No, you didn't, don't you? You didn't say that in your brief. Well, I mean, when I said it was a clarifying amendment, I was using that to — in my argument, that the court should have considered that. Pardon me, Your Honor? I said that would be like my telling you it's a pretty day, but that doesn't tell you why I think so. Yes, Your Honor. You need to be specific in your points. That's a really hard issue for me. I don't — I can't — you may tell me the law says this, but I can't imagine the Commission can just say, this is clarifying, and therefore erase Fifth Circuit law. We would have to go through the factors that tell us whether it's retroactive. Well, the court — the United States Sentencing Guidelines in the appendix did state that the amendment revises 2G2.2b3b and the commentary to clarify that the five-level enhancement applies if the defendant distributed in exchange for any valuable consideration. I know that's what they say, but they can't just waive the verb clarify and make something retroactive and reverse Fifth Circuit law. We would have to ask whether or not it was meant to be retroactive under a multi-factor test. And I think that its statement — it's a strong indicator that it was meant to be retroactive when they're stating that it was clarifying. And this is the issue that the district court had with this enhancement, was because the district court said that it didn't believe it to be a tick-for-tat situation, whereas appellant was arguing that somebody had to actually — there had to be an exchange between two people or another person. The district court didn't buy that argument. The district court — there was no mention by the appellant or the district court regarding the pending amendment to this guideline. They did consider the pending amendment to the other guideline regarding state-of-masochism and the vulnerable-victim enhancement, and the court decided that it would sentence defendant at the lowest end of the guidelines as they would be in November when the amendments came into effect, which further shows the prejudice that happened in this case, going also to the ineffective assistance-of-argument counsel claim, is that if defense counsel would have argued this enhancement, it appears that the — and the judge specifically stated that his desire was to sentence him at the lowest end of the guidelines as they would be in November, which is why he considered the — the other amendment regarding state-of-masochism. But if we're in a plain-error world, and no one brings it up, and no one says make it retroactive, and under law that would have applied under the book at when he was in November, and it's gross, how could it be a miscarriage? He did raise it in the pretrial motion, the specific issues that are addressed in the amendment. Although he didn't state the amendment that's coming up in November, he stated the basis that was underlying that amendment. So those issues were before the court. The court did consider those issues and denied it, but he didn't have the understanding of the guideline that was coming into effect in November. I believe based on that understanding and his intention to sentence him at the lowest end of the guidelines in November, that he would have applied those, which would have greatly reduced his sentence by up to 100 months of what he actually did receive, because he found that a reasonable sentence would be at the end of the guidelines as they would be in November in this case. Roberts. These are complicated points, retroactivity of guidelines. And the facts here are quite rich as to the extensiveness of his involvement downloading, taking donations. If I'm not mistaken, you didn't file a reply brief. That makes it really hard on plain error review. I can file a supplemental memorandum if I'm not saying that. I'm just saying the government had four or five pages in the table of authorities on cases. It's going to help us in plain error review to have your answer to those things. Yes, Your Honor. And Your Honor, back to the issue regarding it being plain error review, regarding the double jeopardy, I did want to state that there are the other cases that did analyze it in the plain error review based on the analysis of how you have to raise it at the end. Once you're convicted, it doesn't make sense to require somebody to file it in a pretrial motion. If anything, as the other circuits have, it would be addressed as plain error, which in this Court we can find that plain error did exist. The case law starting off from Ball, which is a Supreme Court case on possession and receipt, is very instructive on the case as it would apply to this matter. And that's, if you look at Eel and all the other cases that came after Ball, they're all referring back to the Ball Supreme Court case. Other case courts have found that there was clear error, even when it was a matter of first impression, based on the reading of the statute in that case and based on Ball and the reading of the legislative intent in Congress. Do you know if 3582 motions are being granted on this five-level enhancement provision? I don't think 3582 would be applicable in this case because it wasn't mentioned in 1B1.10. So I believe in this case the only chance that my client has of any relief would be in this Court for it to be remanded under either the third, fourth, or fifth issue. Okay. I'll save the rest of my time for rebuttal. Yes, you've set time for rebuttal. Ms. Sack? May it please the Court. Your Honors, I believe that the most controlling thing that should guide this Court is this Court's decision in United States v. Richardson, which was decided in 2013, and Judge Higginson, you sat on that panel. Since that decision, this Court has determined what distribution means. And unfortunately for Mr. Barton, he distributed child pornography by making it available on a publicly accessible website to all. So it's — even if it's not peer-to-peer filing, he — what his conduct did by uploading and downloading was sort of like a big barter exchange? What he did actually made it more accessible than what Richardson and Rosiander and that whole line of cases. So the difference is, with peer-to-peer software, an individual has to download a specific peer-to-peer program. Typically, it's publicly available, like an emule or a BitTorrent, any of those programs. Then he accesses a network that other individuals with the same peer-to-peer software are using. And at that point, you search for what you're looking for, whether it be music, movies, or, in the case of these individuals, child pornography. So there are many affirmative steps in order to access peer-to-peer — child pornography via peer-to-peer. What Mr. Barton did was essentially just put it out there on the web for anyone to access. You didn't need special software. You didn't need to be on a particular network. You just needed to go to the website that he created, which was publicly accessible. He did ask people to make donations, and I'll get to that in a second. But what he did was make it even more readily available than the individuals in Richardson, Rosiander, and the whole line of unpublished opinions where this court has repeatedly ratified and followed the precedent it set in Richardson. I believe that, as you said earlier, Your Honor, this record is very replete with facts that support that there was a wholesale distribution of child pornography here. That's the — whether there's facts to support the guilty plea to distribution. Right. Okay. So let's move on from there. Assuming that — that Your Honors agree with that, let's talk about the amendments. Well, maybe just quickly on the double jeopardy.  On double jeopardy, Your Honor, I agree with what you were suggesting, and — and it is the United States' position that the way we charged Mr. Barton was very intentional and specific. Mr. Barton was distributing and receiving via this website during a specified period of time, per the information, which was December 2nd of 2013 through August 27th of 2014. That left an approximate six-month period of time where we don't know what Mr. Barton was doing, what he was obtaining as child pornography and the like, and was then searched via a Federal search warrant on February 19th of 2015, at which point they recovered not just thousands of images, Your Honors, hundreds of thousands of images and videos, and as the judge pointed out, some of the most horrific images and videos that he's ever read being described. And this comes from a district court judge who sat as a magistrate judge and heard these. The facts are very bad, but what if the government knows that he's — let me get my terminology right — receiving on a particular day, and then they say, you know, we'll do the search warrant the next day, and they get the exactly same images? Would a day allow — would it not be multiplicitous, under Ball? Only if you couldn't demonstrate that there were different videos or images. So a day could be a lot harder. But you're talking about six months, and in that case — What's the best case that clarifies, whether it's drugs, guns, or child porn, the government can show receipt on one day, but it can't be that the government can then separately charge possession for the same thing received just by waiting a certain amount of time. Is your position before us it would have to be a different piece of contraband, or is your position it could be the same as long as enough time elapsed? No. I believe that you would have to demonstrate in certain instances both, because there are some types of cases where, depending on how it was obtained and when it was obtained, you could demonstrate that he had — because, unfortunately, in this area of the law, duplicates count. So let's say we're talking about a particular series of child pornography. And if we know that the defendant has the entire series and has multiple images within that series of the same one, some of those could have been received on the same day. And some of them could have also been received on a different day, even though they're the same image. So their argument is it's a little basic because if you don't understand the way the for guideline purposes, that same image could have been — could have been received on many different occasions. And all this could have been, et cetera, is because there wasn't a motion to dismiss and there wasn't a request to elect. Correct. And at that point, there would have been a forensic review that would have clarified anything if it had actually become an issue, Your Honor. But we didn't get there because, A, it was charged on separate dates and there was a six-month lapse, and, B, because it was never challenged and we don't get there. That is correct. So you were going to move to the sentencing issue? Yes. Before you get there — Yes, sir. — your point is plain error review or simply barred from raising this issue because it wasn't in a pretrial motion? Absolutely, Your Honor. Absolutely what? It is barred because there was no pretrial motion on the convictions. Did you argue that in the brief, though? I thought you went right to plain error review. No, we did both. We argued that it's foreclosed because of the dates and the way it was charged and there was no challenge. And then we went on to say that while the multiplicitous argument is foreclosed as to the convictions, it would not necessarily be foreclosed as to the sentencings. Which I think opposing counsel was trying to say as well. Yes. Yes. But if we get there, we still don't reach the third and fourth prong of plain error review. So moving on to the amendments, if it pleases the Court, the defendant is charged the defendant moved to have his sentencing put off until the amendments went into effect, at which point I was actually the trial counsel. I filed a motion saying we don't need to put this off. Your Honor can consider the amendments, and we can have the sentencing in a timely manner. At sentencing, the amendments, the future amendments, specifically that about sadomasochistic and vulnerable victim, were discussed. And we agreed that if we were going to calculate with the new amendment, there would be a two-level reduction, because you can't have sadomasochistic and vulnerable victim in this particular case. There are cases where you can, but under the new guidelines in this particular case, you would not have been able to, which would put us at 235 to, I believe, 295. And he was sentenced to 235 months. Breyer. And the judge, they're all trying to be kind, give them the guidelines, but no one had focused on this five-level enhancement. But, but, if their argument is correct on the five-level distribution enhancement, the facts in this case bear out that under the new guidelines, Mr. Barton could be assessed the five-level distribution enhancement because he did have pecuniary gain. But how do we, on review, do we cold-heartedly apply the law that it doesn't matter what you wanted to do as to the future because the controlling guideline book meant he gets it under gross? Or are we saying you did try to give him the benefit of the guidelines, but applying them, he doesn't get it? Which is the analysis? I think the analysis has to be that the current state of the law in the Fifth Circuit is you are bound by the guidelines as they sit the day you are sentenced. The fact that Judge Hanks went out of his way to be fair and to apply these and to look also to the 3553A factors, I think that in any sentencing scheme, given the analysis that was performed, this would have been the sentence that would have come out. As an intellectual exercise, I think that what was said was in error by Mr. Barton's counsel here because under the new guidelines, he would get the five-level distribution enhancement because there was pecuniary gain. This was people paid him. They donated money to this website, and it can be argued that he profited for making child pornography available. Yes. So under — if we had put sentencing off, probation would have recalculated in the PSR, and either they would have found that the five-level applied or the government would have objected to their calculations and say, no, no, no, it's not the two-level, it's the five-level. So he ultimately would come out with the same guideline calculation range under the new amendment, which makes him a little different than most that are subject to the new amendment. But we don't get there. That's almost an intellectual exercise. Roberts. It's helpful to know because, obviously, this is a frequent area of prosecution. It sounds like you know the area well. How — what is your opinion on retroactivity? I don't believe that the guidelines in this case, these amendments, are retroactive. But the government's position in the Ninth Circuit was that it is. But we are not in the Ninth Circuit. Well, you are the government. In the Fifth Circuit. Well, you are the United States government. Have you studied why they took the position that the guidelines are retroactive in the Ninth Circuit? And you're free to argue they aren't here? No. I have no idea about what the rationale for the Ninth Circuit's interpretation — It's stated the government concedes. I'm sorry? The Ninth Circuit relied on the government's acknowledgment that this amendment is retroactive. So you're saying if you apply the Huff factors, in your opinion, it's not. That would seem to be inviting us, if we go down the intellectual exercise, to create a split. Correct. And we're here arguing about the amendments because in a lot of cases there was a split. And the Fifth Circuit lost, essentially, when the Sentencing Commission decided to amend the guidelines. That's why I'm a little nervous. If we were to go there, are you inviting us to lose twice? No. I don't think I'm inviting you to lose twice. I think that the way the guidelines are amended take care of a great many of the issues that were in conflict and that this would not — I think that this particular factual scenario is somewhat unique in that the new guideline calculation would come out exactly the same as the old guideline calculation because of his specific facts. And when you look to the state of the controlling precedent, it actually says, under plain error review, when you get to these issues, that you have to go to a fact-specific and circumstance-specific case analysis. So unfortunately, globally, Mr. Barton is a little bit of an anomaly. On the high side, in that he did so many aggravating things. He didn't help himself in any way with his activities. And like Judge Hanks said, there was a horrific amount. And what he did — I just have one other question. Is the opposing counsel right that 3582 would not be available? I don't agree with that necessarily. I believe that that would have been the first step, and then from there you would go to the 2255, which we're not at yet. The point as far as the facts and circumstances of this specific case, I believe that, like any case under these amendments, there — the analysis really stops with the judge used the right guideline. We can certainly go forward, and we did with the intellectual exercise, but the controlling case law in the Fifth Circuit is that we are finished. I believe that there is a sufficient factual basis for this Court to find that the defendant distributed. There is absolutely nothing in the Fifth Circuit that suggests this has to be a tit-for-tat exchange, that there has to be an identified party that receives this information in order to move on. We do not believe that there was a double jeopardy issue, and we believe that the amendments, though they did not have to be taken into account, were, and that there is absolutely no grounds under the fourth issue that is proposed by the defendant in this case that this should be sent back for resentencing under the new guidelines. The judge in this case followed the Fifth Circuit law, and what we would ask, Your Honors, is that you affirm the defendant's conviction and sentence in this case. Does the word distribute here have the same meaning as the words make available, or does distribute require something more than make available? Make available are my words, but — No. I think you're absolutely right, Your Honor. I think that under the case law, distribute is analogous with makes available. It's like a library. The library makes books available. Whether you or I walk in and check those books out doesn't change the fact that they are available for anyone who can properly obtain a library card or who can properly get on the Internet and access these items. The library doesn't necessarily keep track of everyone that comes in and browses and looks but walks away. In this particular case, the website did not catalog who took what, but Mr. Barton was very clear in his statement to law enforcement that is repeated in the PSR that what this website did was offer a platform where people could email, chat, exchange videos, pictures, and do whatever they wanted on that website. There were no restrictions. And so, yes, distribute is analogous to makes available, and that's the same way it is on the peer-to-peer network. When it is in a shared folder in any of the peer-to-peer programs, it is available to other parties on that network looking to obtain — whether it's music, movies, child pornography And unless the individual takes affirmative action to make their shared folder not shared, then it is available. Yes. Roberts. Thank you, Ms. Zagg. Zagg. Thank you. I would yield the rest of my time, Your Honor. Roberts. All right. Ms. Luccaio, you've saved time for rebuttal. Can I please the Court? First, I would like to start by addressing the Richardson opinion. The government relies heavily on this opinion in Richardson. However, that reliance is misplaced. In Richardson, the Court found that the lieutenant had actually downloaded one such video. So this is not analogous with somebody just making something available. Specifically, in Schaeffer, which is relied upon by Richardson, the Court stated in Smith, which is from the Tenth Circuit analyzing its previous opinion in Schaeffer, that the issue in Schaeffer was what act of conduct on the defendant was necessary before the Court could find that he had distributed it. They're stating that making the file available is enough on the party's conduct, just like they talk about making gas available at a gas station is enough. When he was asked exactly at rearrangement, did you distribute, he said yes. Yes, Your Honor. He said that he distributed, but the basis of the reason for that, you have to have a factual basis. So for people who plead guilty, not really understanding what the elements are that they're pleading guilty to, there's no understanding in the record in this case that Barton understood that somebody had to actually download an image that he uploaded. Now, the government stated that the government didn't catalog what was taken. There's no evidence that anything that Barton distributed was actually taken. And if you were to argue, if you were to find that simply making it available would constitute distribution, you would be creating a circuit split. Recently, as 2016, in the Smith opinion, and that's in the Tenth Circuit, the Court found that no circuit has found there's currently no circuit split on whether an actual download is required for distributing, stating that no circuit, including the Tenth Circuit in Schaeffer, which is relied upon by Richardson that the government's of a download or transfer or material is by another person. In fact, Hussman in the Third Circuit cited Richardson for its finding that there has to actually be a download. The Court said, several circuits have made clear that distribution occurs when pornographic materials are actually transferred or downloaded by another person, citing Richardson, stating that uploading a distribution conviction where a law enforcement officer actually downloaded child pornography. So the other be a circuit conflict. That's from 2014, and Hussman also said there is no circuit conflict. That was after Richardson, stating there has to actually be somebody that can do it. Kennedy, we've got plain error of review on the distribution, correct? Yes, Your Honor. And other courts have found that there was plain error. So he says he pleads guilty. He says he distributed. Now, afterwards, he's saying he didn't because legally he didn't. You have two minutes. You might want to get to your other points rather than just factual insufficiency to something he pled to. Yes, Your Honor. Well, what happened at the plea exchange was that the government stated for clarification purposes, can you elicit from Mr. Barton that he understood that by uploading the images and information back to the Internet, he was in fact distributing. And the Court says, yes. Do you understand that you distributed the child pornography? And he said, yes, sir. That was his understanding of what was required to distribute, for him to upload those images and make them available. But that is not what the circuit State has required. So he is not admitting that he distributed in the way that it's required. He didn't admit that somebody actually downloaded an image, and the government has no evidence that anybody actually downloaded an image. That doesn't satisfy any circuit's opinion at this point, and this Court to decide otherwise would create a circuit split. Additionally, Your Honor, I did want to go back to whether or not the double jeopardy issue was raised because it wasn't raised in a pretrial motion. And the Supreme Court case in Olano distinguishes between a waiver and forfeiture. And it says that whereas forfeiture is the failure to make a timely assertion of a right, a waiver is the intentional relinquishment or abandonment of a known right. He never intentionally relinquished or abandoned it. He just waived it by failing to file that pretrial motion. At this point, it should be considered plain error, as the other circuits have addressed it as plain error. The Court said in Olano, mere forfeiture as opposed to waiver does not extinguish an error. A forfeited error is reviewed to determine if it satisfies the plain error analysis. Additionally, Your Honor, regarding the different dates, you stated in Warner, you distinguished there the government had argued that the time, the time requirement was sufficient, that there was a different time. And I know that's been an issue here. Well, you had stated the allowable unit of prosecution was material or the medium, and that the Court was misinterpreting the two. You stated that the government's argument that two counts are not multiplicitous because Warner possessed the same child pornography on different days overlooks the pertinent unit of prosecution is each material, not each day. I would actually refer the Court also to Eel, which stated that Eel downloaded and kept during his time frame what was found in his possession on April 2016. The government does not claim that receiving and possession are based on completely different child pornography. And that's the same issue that we have here. Thank you, Your Honor. Roberts. Thank you, Ms. Vitale. Your case is under submission, and we notice that you are court-appointed. We wish to thank you for your willingness to take the appointment, and appreciate your work on behalf of your client. Thank you, judges.